IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MURIEL BOLDEN,                         §
                                       §
        Plaintiff,                     §
                                       §
V.                                     §        CIVIL ACTION NO. H-06-2693
                                       §
MICHAEL ASTRUE,                        §
COMMISSIONER OF THE SOCIAL             §
SECURITY ADMINISTRATION,               §
                                       §
        Defendant.                     §

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

        Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary

Judgment, and Brief in Support (Document No. 12), and Defendant's Response to Plaintiff's Motion

for Summary Judgment and Cross Motion for Summary Judgment (Document No. 14).   Having

considered the cross motions for summary judgment, the administrative record, and the applicable

law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for

Summary Judgment (Document No. 12) is DENIED, Defendant's  Motion for Summary Judgment

(Document No. 14) is GRANTED, and the decision of the Commissioner is AFFIRMED.

---

        [1] The parties consented to proceed before the undersigned Magistrate Judge on October 31,
2007. (Document No. 17).

**I.  Introduction**

Plaintiff Muriel Bolden ("Bolden") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") benefits.   Bolden argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ, Harry L. Williams, Jr., committed errors of law when he found that Bolden retained the residual functional capacity ("RFC") for a restricted range of light work.  In particular, the ALJ made following RFC determination:

> [Bolden] has the residual functional capacity to perform the exertional demands of a limited range of light work, or work which is generally performed while standing/walking frequently (up to six-hours in an eight-hour workday) and requires maximum lifting of twenty pounds occasionally, ten pounds frequently.   The claimant's residual functional capacity to perform the exertional demands of the full range of light work, however, in this case is further reduced by the following limitations:  occasionally climbing stairs and ramps; occasionally stooping, kneeling, crouching, and crawling; never climbing ropes, ladders, and scaffolding; no working above the shoulder level; and, requiring the option to sit/stand at will to frequently move around.  (Tr. 20).

The ALJ further found that while Bolden could not perform her past relevant work as a fast food worker , she nonetheless could perform work as an electronics worker, an assembler, and a packager, and that she was therefore, not disabled.   Bolden contends that the ALJ failed to apply the appropriate legal standards and that substantial evidence does not support the ALJ's decision. According to Bolden, the ALJ  erred in several respects, first, by violating SSR 00-4p by failing to resolve the conflict between the Vocational Expert testimony and the DOT.  Bolden contends that because the ALJ found she could perform a limited range of light work, the jobs identified by the VE are at the light level and therefore, require a higher exertional level than she had or had a higher skill

level.  Bolden further argues the ALJ erred by not qualifying the jobs listed with the VE and by not including any environmental limitations due to her history of pneumonia.  Bolden next argues that the ALJ erred by not providing any reasons for his rejection of the opinion of Dr. Stanton Fisher, the testifying medical expert.  According to Bolden, because Dr. Fisher provided definite reasons for his conclusion, including reference to specific medical records, the ALJ erred by rejecting this opinion.  Finally, Bolden claims the ALJ erred in evaluating her subjective pain complaints.  According to Bolden, the ALJ failed to give specific reasons for finding her complaints not credible.  Bolden moves the Court for an order reversing the Commissioner's decision and awarding benefits, or in the alternative, an order remanding her claim for further proceedings.  The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Bolden was not disabled as a result of her impairments, the decision comports with applicable law, and that it should therefore be affirmed.

## II.  Administrative Proceedings

Bolden applied for SSI benefits on May 20, 2004, claiming that she has been unable to work since May 5, 2004,[2] due to degenerative disc disease, history of substance abuse, right shoulder problems, and chronic obstructive pulmonary disease. The Social Security Administration denied her application at the initial and reconsideration stages. (Tr. 27-38).  After that, Bolden requested a hearing before an ALJ. (Tr. 39-40).  The Social Security Administration granted her request (Tr. 41-47) and the ALJ held a hearing on February 10, 2006, at which Bolden's claims were considered *de novo*.  (Tr. 214-241).  On March 14, 2006, the ALJ issued his decision finding Bolden  not disabled.

---

[2] Bolden later amended the onset date to May 20, 2004.

(Tr. 14-23). The ALJ found, at step one, that Bolden had not engaged in substantial gainful activity since the alleged onset of disability. At steps two and three, he found that Bolden has degenerative disc disease, history of substance abuse, right shoulder problems, and chronic obstructive pulmonary disease, all of which are severe impairments within the meaning of the Act, but that these impairment(s) did not meet or equal the requirements of a listed impairment. The ALJ further found, at step two, that Bolden's uterine fibroids were not severe impairments within the meaning of the Act. At step four, the ALJ concluded that Bolden's testimony was not fully credible. He further concluded that Bolden had the residual functional capacity ("RFC") for a limited range of light work. In particular, the ALJ found that Bolden could perform light work, namely work "which is generally performed while standing/walking frequently (up to six-hours in an eight-hour workday), and requires maximum lifting twenty pounds occasionally, ten pounds frequently. The ALJ further limited Bolden's light work RFC as follows: Bolden could "occasionally climbing stairs and ramps; occasionally stooping, kneeling, crouching, and crawling; never climbing ropes, ladders, and scaffolding; no working above the shoulder level; and, requiring the option to sit/stand at will to frequently move around." (Tr. 20). Also, the ALJ found that Bolden could not return to her past relevant work. At step five, based on Bolden's RFC, and the testimony of Patricia Cowen, Ph.D., a vocational expert, the ALJ, using the Medical-Vocational Guidelines as a framework, *see* Appendix 2, Subpart P, Social Security Regulations No. 4, Rule 202.13, concluded Bolden was not disabled because she could perform a restricted range of light work, including jobs such as an electronics worker, an assembler, and as a packager, all of which are jobs that exist in significant numbers in the regional and national economy, and that she was, therefore, not disabled within the meaning of the Act.

Bolden then asked for a review by the Appeals Council of the ALJ's adverse decision. (Tr. 13). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. §§ 404.970, 416.1470. After considering Bolden's contentions, in light of the applicable regulations and evidence, the Appeals Council concluded, on May 25, 2006, that there was no basis upon which to grant Bolden's request for review. (Tr. 10-12). The ALJ's findings and decision thus became final. Bolden has timely filed her appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both Bolden and the Commissioner have filed Motions for Summary Judgment (Document Nos. 12 & 14). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 241 (Document No. 9). There is no dispute as to the facts contained therein.

## III.  Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of

5

Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g).   While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh  the evidence in the record nor try the issues *de novo*, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985).   Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).   The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity."  *Anthony,* 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986).

The Commissioner applies a five-step sequential process to determine disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits  are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

     5.  If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett*, 67 F.3d at 563.

     Here, the ALJ found that Bolden, despite her impairments and limitations, could perform a limited range of light work restricted to the extent that she could occasionally climb stairs and ramps, occasionally stoop, kneel, crouch, and crawl, never climb ropes, ladders, and scaffolding, could do no work above the shoulder level, and could sit/stand at will, and frequently move around.  (Tr. 20).  The ALJ further found that even though she could not perform her past relevant work as a fast food worker, she could, given her age (50 or approaching advanced age), education (high school), work experience (fast food), and relying on the testimony of a vocational expert and the Medical-Vocational Guidelines as a framework, perform other jobs such as a electronics worker, an assembler, and a packager, and that she therefore was not disabled within the meaning of the Act.  As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

     In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating,

8

examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age.  *Wren*, 925 F.2d at 126.

## V.  Discussion

### A. Objective Medical Evidence

The objective medical evidence shows that Bolden had complained of and had been treated for degenerative disc disease, history of substance abuse, right shoulder problems, chronic obstructive pulmonary disease and uterine fibroids.

The medical records show that Bolden was hospitalized at LBJ Hospital in Houston, Texas from February 16, 1995 to February 19, 1995, because of left lower lobe/partial upper lobe pneumonia.  The notes further show that Bolden has a history of crack cocaine use.  (Tr. 156-164).

In 1998, Bolden was treated at the Harris County Hospital District on July 11, 1998, for left eye lesions/eye infection.  (Tr. 188-192).  Bolden returned on September 10, 1998, again complaining of problems with her left eye as well as her back.  (Tr. 184-187).  An x-ray of her lumbar spine revealed that Bolden had "degenerative changes at the L5-S1 level.  No evidence of traumatic injury."  (Tr. 183).  Based on Bolden's symptoms and the x-ray, her treating doctor opined she had "degenerative disc disease/osteoarthritis of spine at L5/S1 and L4/5 (patient's symptoms at L5/S1).  Also, L4/5 and L5/S1 bilateral facet joint arthopathy (probably not cause of pain." (Tr. 185).  Bolden was prescribed Motrin for pain control, and specifically advised that "the only effective therapy for your back pain is physical therapy.  Get Gold Card."  (Tr. 185).  Bolden returned on September 14, 1998, for her eye.  (Tr. 178).  On September 24, 1998, Bolden returned seeking a referral for physical

therapy.  (Tr. 174-177).  According to the treatment note, "no cva tenderness, musculoskeletal pain or assymetry" was noted in Bolden's back.  (Tr. 177).  The last record for 1998 was on October 20, 1998.  (Tr. 171-173).  Bolden complained of pain in her left knee, right knee, and back.  The exam of the left knee revealed no effusion and the ligaments were intact.  With respect to her back, there was tenderness to palpation and mild muscle spasm.  Bolden was instructed to take Motrin for pain control and to ice her knee and back.  (Tr. 173).

In 2000, Bolden sought medical care for right lobe pneumonia, which was confirmed by chest x-ray.  (Tr. 165-170).  The treatment note reveals that Bolden admitted to tobacco use, drinking alcohol occasionally, and use of cocaine.  (*Id.*).

In 2004, Bolden sought medical care in January for back pain, leg pain and excessive periods.  A mass was detected in the lower left quadrant of the abdomen.  (Tr. 202).  Bolden missed an appointment scheduled for March 24, 2004.  (Tr. 201).  Bolden was next seen at Memorial Hospital in Gulfport, Mississippi on May 6, 2004.  (Tr. 147-152, 196-198, 200).  Bolden complained of chronic right shoulder pain, low back pain and low abdominal pain. (*Id.*).  Bolden underwent a pelvic ultrasound on July 27, 2004.  (Tr. 194).  The ultrasound showed a "markedly enlarged uterus with multiple uterine fibroids." (Tr. 194).  Bolden also complained of right shoulder pain.  (Tr. 195).  The doctor noted that Bolden had "degenerative changes evident in the acromioclavicular joint.  There are no other findings."  (Tr. 195).

In connection with Bolden's application for SSI, she underwent a consultative examination by Dr. Phillip Compton on July 1, 2004.  The results of the examination and Dr. Compton's conclusions follow.

Physical Examination:

GENERAL, gait is normal.  She does not use an assistive device.  She is able to get on and off the examination table without difficulty.  Her gross mental functioning is normal.  Speech is fluent.  She answers questions appropriately.  Height 5/4".  Weight 159 pounds.  Blood pressure is 124/82.  Heart rate 78.  Respiratory rate 12.  Temperature 98.9.  HEENT, pupils equal radius and reactive to light.  Funduscopic exam is normal bilaterally.  Vision without glasses 20/40 right and 20/40 left.  20/40 both eyes.  LUNGS, clear to auscultation.  HEART, regular rate and rhythm without murmur, rub or gallop.  No jugular venous distention.  ABDOMEN, positive bowel sounds.  Nontender.  No masses.  EXTREMITIES, 2 plus dorsalis pedis and posterior tibialis pulses in the feet bilaterally.  No edema of the lower extremities.  No varicose veins of the lower extremities.    No ulcers on the feet bilaterally.  MUSCULOSKELTAL, right shoulder is minimally dislocated inferiorly.  She has normal extension of the right shoulder, normal flexion of the right shoulder.  She can abduct the right shoulder 100 degrees.  The left shoulder has normal range of motion in all directions.  Bilateral elbows and wrists have normal range of motion in all directions.  Bilateral hands and digits have normal range of motion in all directions.  Knees have normal range of motion in all directions.  Ankles have normal range of motion in all directions.  There is no swelling of any of the joints of the upper and lower extremities bilaterally.   Cervical spine has normal range of motion in all directions.  She is able to squat and arise from a squatting position, She is able to walk on her heels.  She was able to walk on her toes.

NEUROLOGICAL, cranial nerves two through twelve are intact.  She has 5 over 5 hand grip bilaterally.  Normal fine motor movement of the upper extremity digits bilaterally.  She has 5 over 5 strength with flexion and extension of the elbows bilaterally, 5 over 5 strength with abduction and adduction of the shoulders bilaterally, 5 over 5 strength with flexion and extension of the knees bilaterally, 5 over 5 strength with dorsi flexion and plantar flexion of the ankles bilaterally.  Sensation is normal to soft touch and pin prick in the bilateral upper and lower extremity joints.  Reflexes 2 plus, brachial radialis, biceps, patellar and achilles reflexes bilaterally.  Romberg test is normal.  Finger to nose is normal bilaterally.  The lumbar spine bilateral paraspinal muscles are nontender.   No cervical, submandibular or supraclavicular lymphadenopathy.


ASSESSMENT:
(1) Prolonged menstruations and dysmenorrhea.

(2) Low Back Pain.

(3) Minimally dislocated right shoulder.

Based on the patient's physical exam the patient should be able to stand for eight hours a day during an eight hour work day. She should be able to sit for eight hours a day during an eight hour day. She should be able to move about for eight hours a day during an eight hour work day. She should be able to lift and carry heavy objects. She should be able to handle and manipulate small objects. Her ability to hear and speak is normal. She should be able to make appropriate occupational, personal, and social judgments. (Tr. 154-155).

Bolden was treated at the Coastal Family Health Center on August 9, 2004. (Tr. 210). She was seeking treatment for back pain. Bolden reported smoking a half package of cigarettes per day. The results of her exam showed Bolden had an abdominal mass, bilateral wheezing, and a "1 cm hard nontender nodule approximate 3 fingers beneath and to the right lower lumbar." (Tr. 210). An x-ray was taken of the lumbar spine on August 23, 2004. (Tr. 193). The x-ray showed:

There is mild dextroscoliosis. There are degenerative changes of the posterior facets most prominent at L4-5 and L5-S1 and to a lesser degree at L3-4. There is degenerative narrowing of the L4-5 and L5-S1 disc spaces with anterior osteophyte formation. There is no fracture or subluxation and I see no destructive bone lesion or evidence of spondylolysis. (Tr. 193).

Bolden returned to the Coastal Family Health Center on October 7, 2004, to check her lungs. The doctor noted that her lungs were clear. She still, however, had a lower abdominal mass. (Tr. 208).

Dr. Stanton Fisher testified at the February 10, 2006, hearing. Dr. Fisher stated that in connection with his testimony, he reviewed Bolden's records. According to Dr. Fisher, while x-rays showed that Bolden had some osteoarthritis and degenerative disc disease she did not meet Listing 1.04a. (Tr. 233). Dr. Fisher also testified that with respect to Listing 12.09 (substance abuse), Bolden testified she was a heavy smoker and had a cough. That, coupled with an episode of pneumonia in February 1995, which resolved, did not meet or equal Listing 12.09 (substance abuse). (Tr. 233). As to Bolden's right shoulder problem, Dr. Fisher testified the medical records show that Bolden had a limited abduction of the arm to about 100 degrees, and some osteoarthritis. However,

Dr. Fisher opined this did not meet or equal listing 1.02b.  Dr. Fisher also addressed Bolden's claim she was disabled due to chronic obstructive pulmonary disease.  According to Dr. Fisher, the records show Bolden had wheezing and a history of pneumonia, but that her symptoms responded to medication and did not meet or equal a listing.  Dr. Fisher testified that Bolden had been diagnosed with uterine fibroid/excessive bleeding but that she did not meet or equal a listing.  (Tr. 233-234).  Overall, Dr. Fisher opined that none of Bolden's impairments met or equaled any listed impairments.  (Tr. 234).

Here, substantial evidence supports the ALJ's finding that Bolden's uterine fibroids were not severe impairments, and that Bolden's remaining impairments (degenerative disc disease, history of substance abuse, right shoulder problems and chronic obstructive pulmonary disease) were severe impairments at step two, and that such impairments at step three, individually or in combination, did not meet or equal a listed impairment.  In addition, substantial evidence supports the ALJ's finding that Bolden retained the RFC for a restricted range of light work.  The ALJ, based on the totality of the evidence, concluded that Bolden could perform a restricted range of light work, and gave specific reasons in support of this determination.  This factor weighs in favor of the ALJ's decision.

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight."  *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings.

13

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.'"  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995)).  The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists.  *Id.*  "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"  *Martinez,* 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical opinions.  Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a physician's opinion must be based on:

(1)    the physician's length of treatment of the claimant,

(2)    the physician's frequency of examination,

(3)    the nature and extent of the treatment relationship,

(4)    the support of the physician's opinion afforded by the medical evidence of record,

(5)    the consistency of the opinion with the record as a whole, and

(6)    the specialization of the treating physician.

*Newton,* 209 F.3d at 456.  While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference.  *Id.*  Again, the Social Security Regulations provide guidance on this point.  Social Security Ruling 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg.34490 (July 2, 1996).  With regard to the weight to be given  "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 ... providing appropriate explanations for accepting or rejecting such opinion."  *Id.*

The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R.          § 404.1527(d).  *Newton,* 209 F.2d at 456.  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").  However, perfection in administrative proceedings is not required.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately.  The ALJ

summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources.

There are two medical opinions in the record:  one from Dr. Stanton Fisher, the medical expert who testified at the administrative hearing based on his review of the medical records, and one from Dr. Phillip Compton, an examining, non-treating physician.  There are no medical opinions in the records from any of Bolden's treating physicians.  None of the medical opinions submitted support the conclusion that Bolden was disabled as a result of her alleged impairments.  Rather, the difference between the opinion offered by the testifying medical expert and that of the examining, non-treating physician concerned Bolden's RFC.  Specifically, Dr. Compton opined that Bolden could perform work up to and including the medium level.  In contrast, Dr. Fisher opined that Bolden was somewhat more limited.  He testified:

Q.  What if any functional limitations would you see here?

A.  Well, I would just make reference to the examination which has already been mentioned dated 7-1-2004—

Q.  Uh-huh.

A.  — July of 2004.  And is recorded in B-2.f, 1 to 3, and the doctor in that examination felt that she, actually felt that she was able to do pretty much everything at the, at the medium level as far as I could interpret what he said.

Q.  Uh-huh.

A.  I think though that all things considered, particularly the problem with her back, that she would be limited somewhat less than that and I would just offer the following.  I think that standing and walking is, and sitting also, is going to be difficult for her without the ability to change position and move around a bit during the day. I think she could stand probably up to two to three hours.  Walking the same.  Sitting about six hours a day.  She would need to change position from time to time, I think, at will.  Consistent with her testimony I think she could raise, she could lift up to ten pounds occasionally and less than that frequently.  Same for pushing and pulling.  I

16

don't think that she should be climbing.  I would think ropes, ladders, stairs, scaffolds would be out of the question for, for her be, – it's because of her, the back makes her unsteady.  I think balancing the same way.  On the other hand, I think that stooping, kneeling, and crouching also would be limited to just occasionally because of her back.  She obviously can't raise her right arm pretty much beyond the horizontal and it, it might pose some problem with respect to reaching with that arm.  Otherwise, handling, fingering, feeling, talking, and hearing I see no limits. there.  She doesn't require assistive devices, at least according to the record.  Exposure to outside atmospheric conditions, I think occasionally would be all that I would think.  She needs to stop smoking.  Actually, that's the biggest exposure that she has as far as, as her respiratory status goes.  (Tr. 234-235).

Here, the ALJ gave greater weight to the opinion of the examining, non-treating physician in formulating Bolden's RFC because Dr. Compton's opinion was consistent with the other medical records, and there was no suggestion that Bolden's condition had changed since the consultative examination.  The ALJ did not err in his assessment of the medical opinions.  To the extent Bolden argues that the ALJ erred by not giving greater weight to the medical expert's opinion, the ALJ gave reasons supporting his determination, and generally, the opinions of examining physicians are entitled to more weight than opinions of non-examining physicians.  Moreover, Bolden cites to no medical records that support Dr. Fisher's conclusion that Bolden could perform sedentary work only.  The ALJ while not elaborating in great detail the weight given to particular records, made clear, nonetheless, that he gave more weight to the opinion rendered by Bolden's examining, non-treating physician.  Given the thoroughness of the ALJ's discussion of the objective medical evidence, and the ALJ's reliance on the opinion of Dr. Compton, which opinion was found to be credible and consistent with the medical evidence as a whole, the Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

## C.  Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled.  *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant.  *Hames,* 707 F.2d at 166.

Here, Bolden testified about her condition.  Bolden testified that she attended one year of college (Texas Southern University), and can read, write and count money.  (Tr. 223).  According to Bolden, she is unable to work because of back pain.  She testified:

> My back.  It gets so bad till it feel like my whole hip is just dangling from a string and about to fall off.  I, sometime I can get up, sometime I can't.  Sometime I have to literally crawl out the bed and grab a door knob to lift myself up.  And my shoulder aches and then in weather like this, it my back is excruciating sometime.  Just

excruciating.  The pain is just so bad and it feels like my lower part of my back is like
a jigsaw puzzle.  (Tr. 224).  *See also* (Tr. 229, 230).

Bolden stated that she controls her pain through use of a heating pad, sitting in a hot bathtub, rubbing

her back, and ibuprofen.  (Tr. 224).  Bolden walks her grandchildren to the bus stop, and spends her

day lying down and watching television programs such as Jerry Springer and the Golden Girls.  (Tr.

225-226, 228).  According to Bolden, she smokes two packs of cigarettes a day.  (Tr. 227).  Bolden

further testified that she has problems if sitting too long, as she has difficulty getting up.  (Tr. 227).

Bolden testified she can pick up small objects.  (Tr. 227).  According to Bolden,  she could walk a

block, could stand for 15 to 20 minutes, could sit for 20 to 30 minutes, if allowed to shift position,

and could lift 10 pounds.  (Tr. 228-229).  In addition, Bolden testified that she was unable to bend

or stoop.  (Tr. 230).  With respect to her shoulder, Bolden testified that it hurts "sometimes" such

as when she lifts something "too heavy."  (Tr. 231)

Based on the reasons which follow, the ALJ rejected Bolden's testimony as not fully credible:

4.  After careful consideration of the entire record, the undersigned finds that the
claimant has the residual functional capacity to perform the exertional demands of a
limited range of light work, or work which is generally performed while
standing/walking frequently (up to six-hours in an eight-hour workday) and requires
maximum lifting of twenty pounds occasionally, ten pounds frequently.  The
claimant's residual functional capacity to perform the exertional demands of the full
range of light work, however, in this case is further reduced by the following
limitations:  occasionally climbing stairs and ramps; occasionally scaffolding; no
working above the shoulder level; and, requiring the option to sit/stand at will to
frequently move around.

In making this finding, the undersigned considered all symptoms in accordance with
the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p.  The undersigned also
considered opinion evidence in accordance with the requirements of 20 CFR
416.927 and SSRs 96-2p, 96-5p and 96-6p.

Upon application, the claimant alleged that it hurts to raise her right arm and has pain
in her right arm when using it for folding clothes and taking a gallon of milk from the

refrigerator.  She alleged that she cannot walk very far without having to stop to rest; however, she also said that she is able to drive and does not need an assistive device to walk (Ex. B4E).

After considering the evidence of record, <u>the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible</u>.

The medical evidence supports that the claimant subjectively reports a back injury of approximately five years prior presenting herself to the Harris County Hospital District for back pain in September 1998; however, physical therapy was consulted (Ex. B4F/10).

Treatment notes from the Memorial Hospital at Gulfport in May 2004 reveal that the claimant subjectively complains of chronic right shoulder pain and low back pain (Ex B1f).  However, a consultative examination in July 2004 reveals the claimant has no limitations, should be able to lift and carry heavy objects, and should be able to hand and manipulate small objects.  During the evaluation, the claimant reported mild and intermittent pain in her shoulder and constant low back pain radiating around both sides of her trunk to the lower abdominal area; however, she was unable to further characterize the pain (Ex. B2F).  Furthermore, medical progress notes dated October 7, 2004, from the Coastal Family Health Center document an examination revealing that all body systems are within normal limits especially all extremities (Ex B8F/1).

A radiology report dated August 23, 2004, does confirm degenerative disc disease; however, there is no evidence of fracture, subluxation, spondylolysis or any other acute abnormality (Ex B5F/1).

The medical evidence does not fully support the claimant's subjective complaints of chronic low back pain radiating to her lower extremities as there is no evidence to substantiate such allegations especially in light of her testimony.  The claimant testified that she traveled back and forth to Mississippi, has not been to a doctor in the year, and has not obtained a gold card from the Harris County Hospital District. Furthermore, the claimant testified that she smokes 2 packs of cigarettes per day against doctor's advice and can lift 10 pounds at one time.  Moreover, her testimony is made much less believable by her obvious overstatement of her symptoms, e.g., her testimony that she had "to lie down all day" is simply not credible.

Upon reviewing the medical evidence, Dr. Stanton Fisher, M.D., the impartial medical expert, testified that the claimant retains the residual functional capacity to perform sedentary work; however, the undersigned gives more weight to the opinion of the examining, non-treating physician who performed a consultative examination in July

2004 (Ex. B2f).  The undersigned notes that the claimant is not taking prescription medications despite allegations of debilitating pain (Ex B12E).  Dr. Fisher also testified that the claimant has a history of cocaine abuse and smokes two packs of cigarettes per day against the advice of her physician.

In accordance with Social Security Ruling 96-7p, the claimant's subjective complaints of chronic low back pain must be supported by clinical and laboratory diagnostic techniques and medical evidence consisting of signs, symptoms, and laboratory findings.  However, the evidence is absent of such clinical and laboratory findings and the claimant's description of her impairment does not alone establish the existence of an impairment nor does her testimony lend to credibility of her allegations (20 CFR 416.928(a)).

Furthermore, an acceptable medical source can provide reports that establish the existence of a medically determinable impairment and may be entitled to controlling weight when the opinion on the nature and severity of the impairment is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence of record (20 CFR 416.927(s)(2) and Social Security Ruling 96-2p).  In this case, the undersigned finds the opinion of the medical expert regarding residual functional capacity to be inconsistent with the evidence of record especially the opinion of the examining, non-treating physician who performed a consultative examination in July 2004.  Therefore, the undersigned gives the opinion of Dr. Phillip Compton, M.D., the examining, non-treating physician controlling weight as it is not inconsistent with the other substantial evidence of record (Ex B2F).  (Tr. 20-22) (emphasis in original).

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly.  Based on this record, there are significant inconsistencies between Bolden's subjective complaints and the objective medical evidence.  The ALJ identified the inconsistencies and gave specific reasons for rejecting Bolden's subjective complaints, such as discrepancies in her statements in light of the medical evidence and the lack of medical evidence to support her subjective symptoms.  Accordingly, this factor also supports the ALJ's decision.

### D.  Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that Bolden, at the time of the hearing, was fifty years old, and had completed high school. The ALJ questioned Patricia A. Cowan, Ph.D., a vocational expert ("VE"), at the hearing about Bolden's ability to engage in gainful work activities. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at  436.

The ALJ posed the following hypothetical questions to the VE:

Q.  If the claimant was limited to lifting ten pounds frequently and 20 occasionally, only occasionally climbing ramps or stairs and never climbing ropes, ladders, or scaffolding, occasionally stooping, kneeling, crouching, crawling, would require a

sit/stand option with the ability to move around frequently at the work space – let's see, we had ---

                          *                          *

— with the right arm lift, limited not, no working above shoulder level, could she return to her past relevant work?

A. No.

Q. Assume a person the same age, education, and vocational history of the claimant, is there other jobs that such a person might perform?

A. Yes, sir. Your hypothetical is compatible with approximately 50 percent of the light unskilled base that the Commission requires. Those jobs provide for a sit/stand option and I define that option as being at the will of the employee. Three examples of jobs in that category would be electronics worker, packager, and assembler. There are 2 to 3,000 of each of those in the Houston region.

A. Yes.

Q. How's that?

A. Well--

Q. If you don't have the sit/stand option any more? If you just---

A. Well, it doesn't matter. If, if an individual can stand two to three hours, then they can stand two to three hours. That, you know, it's, it's their option to sit or stand. (Tr. 238-239).

The record further shows that Bolden's attorney was given the opportunity to question the VE:

Q. I understand. I –

A. That's not, the sit/stand option is not a unique condition to it but because the individual has the lifting requirements of 10 to 20 and they're able to sit or, sit for six hours and stand two to three hours, then it's their option to do it. I, it, it doesn't matter in these particular jobs.

Q. But I was, what I was doing is adding to the hypothetical based on the doctor's testimony.

A.  Uh-huh.

Q.  If we were to look at if she could only stand and walk two to three hours out of an eight hour day—

A.  Uh-huh.

Q.  — that she could only lift ten pounds occasionally and less frequently–

A.  Uh-huh.

Q.  — would that affect the job base?

A.  Well, that moves it into sedentary.  (Tr. 239-240).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert.  A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record.  Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Bolden was not disabled.  Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Bolden could perform a limited range of light work.  While the ALJ failed to specifically ask the VE about whether the representative jobs identified by the VE that Bolden could perform were consistent with the information contained in the Dictionary of Occupational Titles, the ALJ's decision corrected the omission and therefore, any error was harmless.  Bolden argues that all the jobs identified by the VE require a higher exertional level than that suggested by Dr. Fisher or a higher skill level.  Here, all the jobs identified by the VE were consistent with Bolden's RFC, and are types of jobs that could be performed based on a restricted range of light work, given Bolden's age and education.  Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational

expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Bolden was not disabled within the meaning of the Act and therefore was not entitled to benefits.  Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented.  Accordingly, this factor also weighs in favor of the ALJ's decision.

## V.  Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Bolden  was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed.  As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 12), is  DENIED, Defendant's Motion for Summary Judgment (Document No.14) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 28th  day of  March, 2008

Frances H. Stacy
United States Magistrate Judge